646 So.2d 795 (1994)
In re GUARDIANSHIP OF Monty V. FUQUA.
No. 93-4236.
District Court of Appeal of Florida, First District.
December 7, 1994.
H.E. Ellis, Jr. of Sutton & Ellis, P.A., Pensacola, for appellant.
Steven E. Quinnell of James L. Chase and Associates, Pensacola, for appellee.
VAN NORTWICK, Judge.
Appellant, Monty V. Fuqua, appeals an order adjudicating him to be totally incapacitated and requiring the appointment of a plenary guardian. We affirm in part and reverse in part.
In September 1985, Monty Fuqua was rendered a quadriplegic as a result of a workrelated diving accident. Fuqua has received workers' compensation benefits, as well as social security disability benefits. In September 1993, the Judge of Compensation Claims referred Fuqua's case to the circuit court for a determination as to whether a guardian should be appointed to manage Fuqua's affairs. Thereafter, the circuit court issued an order appointing an examining committee of three persons pursuant to section 744.331, Florida Statutes. Fuqua was concomitantly appointed counsel. This examining committee, which was comprised of a layman, a registered nurse, a medical doctor specializing in psychiatry, unanimously agreed that appellant was incapable of managing his own affairs and required a guardian. Following the hearing, at which appellant presented evidence on his own behalf, the lower court issued an order finding appellant *796 to be totally incapacitated and appointing a plenary guardian to "exercise all delegable rights of the Ward and have full powers and duties with respect to the Ward and the Ward's person and property." In this order the lower court summarily noted that no alternative to a plenary guardianship would sufficiently address the needs of Fuqua.
On appeal, Fuqua takes issue with the evidence supporting the finding of total incapacity. We find after a careful review of the record that there was competent and substantial evidence presented during the proceeding below to meet the clear and convincing evidence standard necessary to support this factual finding, In re Bryan, 550 So.2d 447 (Fla. 1989), and, therefore, we affirm the lower court's determination of total incapacity.
We conclude, however, that the record does not reflect a consideration of any less restrictive alternatives than plenary guardianship, contrary to the requirements of Chapter 744. Under section 744.331(6)(b), Florida Statutes (1993):
[i]n any order declaring a person incapacitated the court must find that alternatives to guardianship were considered and that no alternative to guardianship will sufficiently address the problems of the ward.
Further, section 744.344(2), Florida Statutes (1993), provides, in part, that:
[t]he order appointing a guardian ... must be the least restrictive appropriate alternative, and must reserve to the incapacitated person the right to make decisions in all matters commensurate with his ability to do so.
These statutory provisions recognize the great limitations on personal liberty and autonomy which are inherent in the appointment of a plenary guardian.[1] In addition, these provisions reflect the legislative intent that the guardian should be granted no more authority over the ward and his or her property than is necessary for the guardian to address the needs created by the specific incapacities of the ward, so that the substitute decision-making of the guardian leaves the ward with as much personal autonomy as is feasible.
At oral argument, counsel for the parties to this appeal conceded that alternatives to a plenary guardianship were not presented to the lower court, and counsel for the guardian specifically represented that something less restrictive than a full plenary guardianship might be possible in this case. We therefore remand this cause to the lower court for the purpose of receiving further evidence and argument from counsel, upon motion by a party to revisit the question of the scope of the guardianship, and, if appropriate based upon the evidence, to tailor a less restrictive guardianship for this ward.
AFFIRMED in part, REVERSED in part, and REMANDED.
KAHN and MICKLE, JJ., concur.
NOTES
[1] As one commentator has stated:

The extensive loss of personal liberty in the guardianship process is matched in state action only by the severity of sanctions imposed by the criminal justice system. However, unlike criminal law, guardianship proceedings are not putatively imposed pursuant to the state's police powers, but are sanctioned by the theory of parens patriae or "parentage of the state." A person is not made the subject of a guardianship because he transgressed social standards in a manner that presents a danger to others, but because, through illness or other disability, he lacked the present ability to make decisions necessary to carry on life affairs. The court acts in a protective role, like a parent, to assure control and management of the subject's affairs while the subject is not competent to do so. Although guardianship is generated from the standpoint of benevolence, it nonetheless results in a dramatic and substantial loss of personal autonomy, self-determination and civil liberty. Legally, and oftentimes socially, the subject of the adult guardianship is reduced to the status of a minor.
Norman Fell, Guardianship and the Elderly: Oversight Not Overlooked, 25 U.Toledo L.Rev. 189, 190 (1994) (footnote omitted).